Get under advisement. Call our next case, United States v. Lee. Good morning. May it please the Court, my name is Renee Pietropalo, and I represent Mr. Lee. With the Court's permission, I'd like to reserve four minutes for rebuttal. Granted. The government here failed to offer evidence that the charged handgun, which a single witness claimed to have seen momentarily, and which was never recovered, ever traveled in interstate commerce. That handgun charge should never have been submitted to the jury. You're saying that he should have been acquitted on it after the evidence as compared to have it go through the trial as an issue? Yes, there was a motion for judgment of acquittal made early on and made at the close of evidence and made at the close of all evidence. How is there spillover here when he was ultimately acquitted by the jury of that charge? Well, the spillover is the evidence that came in to support the invalid charge, meaning the handgun or pistol charge, spilled over and tainted the jury's consideration of the valid and properly charged rifle charge. Doesn't that argument require, I mean, isn't the test, the Puello test, to ask us to say, oh, the jury was confused? And isn't the fact that the jury came back and said acquit as to the pistol, convict as to the rifle, show they weren't confused? They fully understood the difference, and they made the distinction, and they acquitted. Confusion is one aspect of it. First, let me say, where it's clear that there's zero evidence of the interstate commerce element, that the jury acquitted on the pistol count should not speak volumes. The jury heard the evidence. They heard defense counsel's argument about the necessity for an interstate commerce connection or nexus. They presumably listened to the judge's instructions about the necessity to meet that element, and they did their duty. Good jury. Exactly. Now, this jury, that I think was a good jury, could have still been convinced that Mr. Lee was the man who was wearing a bulletproof vest, who had a pistol in his lap, and who had a rifle in his back seat, But aren't you really saying not that there should have been a court-required acquittal, but you're really saying the jury should never have heard any of the evidence, so that something pre-trial should have been done with this evidence, so that they never have heard it and not risked being, quote, confused or misled? There is a good argument to be made that the charge should never have been filed. I'm asking you if that's the argument you're making. I could make that argument, but I don't think that I need to, because at the end of the day, if the judge had granted the motion for judgment of acquittal, the judge would likewise have ordered all the evidence about the pistol to be stricken, and if we assume that the jury does their duty or could do their duty. Speaking just for myself, I'm more concerned about the other things that you raise, the statements, the dog, and perhaps also the vest. Would you like me to start with the dog? Sure. Sure. The prosecutor's misstatement, he misstated the evidence. He drew improper inferences, and he vouched for the reliability of the bloodhound evidence. But as a matter of closing, I mean, the judge instructs, and we've all been district court judges, the judge says to the jury, evidence is what you heard, not what the prosecutor or the defense counsel say it is. So he says X, and defense counsel says Y. They're both going to argue their version of the evidence. How is what he did, which, by the way, I don't think was objected to, how is it plain error? Part of it was objected to. Part of it was not. The vouching was objected to. Yes. And then you got an instruction, right? I mean, you got a sustaining as to the objection. But no instruction. Which was not asked for. Which was not asked for. The critical part here is to look at the judge's ruling on this issue. The bloodhound evidence was objected to from the start and throughout. It was a continuing objection. And the court ruled that the bloodhound evidence was admissible as circumstantial evidence to show that the driver fled down the path where the rifle was ultimately found. But the court ruled that there could be no reference to Diggers pausing at the coat or at the rifle. Well, there wasn't any statement by counsel that he paused at the coat. No, certainly. And defense counsel was talking about the keys. I mean, defense counsel might have been a little bit more pointed into it. Was that you? No, it wasn't. Okay. You know, more pointed as to, you know, going up against the line, almost to invite the other side. I mean, nobody violated the court's orders as to what the testimony was going to be. Actually, the court was saying that there could be no reference to Digger pausing at the coat or the rifle. And the fact that the U.S. attorney didn't use the word pause or hesitate doesn't change that. He said they came close. He came close. The prosecutor said Digger went to the rifle. And the prosecutor said Digger told us from the stand that the driver discarded the weapon. Isn't it factually accurate to say that that's what Digger did? He went over to that area and kept going. That's not what he said. He said he went to the rifle. I mean, you've got huge woods. Digger didn't go off this beaten path. He didn't go there. He came within, what, 15 inches? This is within 15 inches. And the reason why it's significant what the prosecutor said is the defense, one aspect of the defense is you brought this bloodhound, but the bloodhound did not indicate or alert at the rifle. And he alerts by Digger. So the defense counsel in defense counsel's argument says, you know, he didn't go to the rifle. That wasn't the testimony. The testimony was, et cetera. And the jury says, hmm, what did I hear? You know, I didn't hear that he went to. I heard that he came close. I mean, isn't this argument that is permissible? We're not going to define, you know, limit the verbs that people use that could connote different things, conjure up different things into different people's minds. The point of closing argument is an advocate's way to pose a way to interpret the evidence. And the lawyers are required to use language. So I think what Judge Randella is saying is that it's impossible for us to instruct lawyers in closing argument as opposed to opening statements, which are, indeed, different things, to ratchet down their argument so much that it becomes meaningless and unnecessary. The court's ruling was very clear that this was circumstantial evidence. The court said it could not be used to support the inference that the prosecutor later drew, which was that the dog went to and, in fact, or, excuse me, in effect indicated on the rifle. It was an impermissible inference to draw. It's not a question of language or choice of verbs. It's drawing an inference that the court's order prohibited the government from drawing. And the reason it's significant is— When you say the court's order prohibited, I thought the court's order was pretty precise. The court's order said, I'm not going to let you say that the dog paused or alerted because the dog didn't. But I didn't understand, and maybe you just need to help me out because I missed it, I didn't understand the court to say, hey, I don't want you to imply anything about the dog's behavior. I thought it just said, don't say the dog went and alerted because it didn't. Right, and if you look at the argument at the hearing, and then also the court's comments when defense counsel objected during Officer Harkins' testimony, that's where there's a little bit of discussion. And the point of the ruling was a recognition that the dog evidence wasn't reliable to show that the rifle was connected to the jeep through some scent. Like, this is a quasi-science. Could you move to the issue with the statements? Certainly. I mean, a lot of the testimony of the statements had to do with the actual conduct on that day. There's a lot in the intro of him saying, well, I thought this, and I go through stop signs, et cetera, et cetera. And then it did take a turn to talk about other things with the use of guns to protect your family and things of that nature. What should the district court have done here? The district court permitted it, but then gave an instruction saying it only has to do with knowledge, intent, motive, et cetera. Yes, and for many of the same reasons that the gun should – were this a trial just on the rifle, the gun should not have come in. For many of the same reasons, the statement should not have come in, and that's because you have to look at what are the elements of the crime. This is not a specific intent crime. It's a possession crime. It's a possession crime, exactly. And the judge – Well, his defense is, I didn't possess it, right? Yes. The defense was, there was no gun in my car at all, right? Yes. So why is it not a fair piece of evidence to say, look, you said you had an ongoing feud with Pickles. I wish I had the full name, but Pickles will have to do it. You had an ongoing feud with Pickles, and you armed yourself. Harris. Yes. Thank you. You armed yourself to do that. Now, why shouldn't a jury hear? This guy had a reason in his own mind to have a gun, and he said he had a reason to have a gun, and that's a motive. If that were true as a matter of fact, yeah, that would be a motive. But there was no testimony that there was an ongoing feud. He said it. No, Mr. Lee claimed that on that night that Ernest Harris Pickles was arrested, that Pickles was actually on his way with that gun to kill Mr. Lee. But that was in 2001. Oh, okay. All right. Yeah. I mean, we're talking, but he's just talking to the officers. Do you remember? You stopped me a long time ago, and in that time it was Ernest Harris. Why do you think that in this case it's improper propensity evidence, whereas Mr. Lee obviously thought it was germane to explaining himself? I mean, I know that we can use that as a rationale when it was a one-hour interview, and I think that they described it as a quirk. Well, what makes it an impermissible propensity evidence in this case? It's propensity because it does nothing but show that this man is the kind of man who carries weapons, and he was carrying weapons on this particular day. That's all that it shows. Knowledge was certainly not an issue. Motive is not an issue. I've got to answer the way down, though, because you say that was back, and he was talking about back then, but I thought Krause's testimony was that he did say back in 2001, Pickles is coming to get me. But he also said, speaking then, at the time of the arrest, he acknowledged that there's a long-time ongoing violent feud between Mr. Lee's family and Pickles. And if you read further, he says, I would get a gun if somebody were threatening my family, but there's no allegation that he was being threatened at that moment. What does ongoing violent feud mean? I don't think that you can interpret it to mean that that day Mr. Pickles was about to shoot him, and so he got a gun and carried it. Could a rational jury hear ongoing violent feud and think, hmm, it's ongoing, therefore a motive to carry a weapon? If you go backwards to that statement, what he talks about is the, I have access to guns, I would get a gun if somebody were threatening my family. This guy has threatened my family, but there's no allegation that there's a ---- And that's an interpretation which the defense was free to argue and could argue. At this point, we're not arguing if there aren't alternative constructions you can give to the language. We're just trying to decide whether there's a construction that could be given to it which would reasonably call it motive evidence falling within 404B, right? And my question to you is, is that not a reasonable construction of the language making it appropriate for the judge in the exercise of her discretion to say 404B evidence? I do not believe that it is because I just truly don't believe reading it that it is motive. And even if it were motive, you still have to do the 403 balancing test, which would lead you to conclude that it's far too prejudicial. He wasn't charged. There's no allegation that he was driving to Pickle's house. That's just not the context of the crime that we have here. It's a gun possession crime, and it's allegations of other gun possession. It can't get any more inclined to propensity than that. Well, are there aspects of – let's assume that we thought that was at least relevant from a motive standpoint. Are there aspects that are different in that they show nothing other than prior bad act or character evidence that's prejudicial? Are you talking about the statement, the other comments in the statement? Yes, yes. Yeah, it's replete with comments. It's prior possession of a gun, uncharged possession. The other aspect of it, the degree of proof, I mean, it's so tenuous that it – I know that there's not a high standard for 404B in terms of did something, a prior act when it's not charged, not proven ever happened, but still it's tenuous. The factual basis for it, there's also reference in the statement to – I don't have the statement in front of me either. It's Appendix 417. Sorry. I guess the part that he said he has access to a lot of guns and would use them against anyone who threatens him and his family. Right. He shot at an individual named Pickles on multiple occasions. In all of that, really it's answerable by the 28J letter that I filed yesterday. In a case such as this one where it's an actual possession case, not a constructive possession case, knowledge, intent, those are just not material issues. And so to put in 404B evidence when it's this type of highly prejudicial possession of another gun in a gun case, evidence. Well, doesn't the role of the vest – isn't there a role for the vest in this particular argument? The combination of the vest and the statement about Pickles and the ongoing feud, shouldn't that have given the judge the confidence that was appropriate for allowing the evidence in? The government certainly argued that the vest was propensity, that what goes more with a vest than guns. Is that propensity evidence? Or is that just a remark about circumstantial evidence from which you can draw an inference? So you repeatedly cite that and you're clearly bothered by it, but there are certain things that circumstantially show things go together. If a police officer goes into a home and sees on the coffee table razor blades and a scale, that would be evidence circumstantially from which one might conclude, oh, they're cutting drugs, right? So how is this different from that? Kind of like razor blades and a scale or a baseball and a mitt or peanut butter and jelly. Some things go together. Why is that propensity and not just circumstantial evidence of things that kind of go together? And what happened as part of the crime? He wasn't wearing a red shirt. He was wearing a bulletproof vest. First, as a matter of fact, his explanation for the vest was that there was a shooting on that very same block the day before and someone was murdered. So he's got an explanation. That's great. As a matter of law, in response to your question, Judge Jordan, in the cases where you talk about cutting tools, paraphernalia, leading to the conclusion that it's drug selling, there's expert testimony. Officers testify as experts and say, we know as a matter of fact, because we've done this many investigations, that this is a tool of the trade. And here we didn't have any kind of empirical support for that conclusion. So it needed an expert to say that shielding yourself against bullets with a vest is the kind of thing that people who might think they're going to get into a gun battle do. People who think that they might get shot, not necessarily people. Driving in this very high crime neighborhood, might I add. But then your defense would have been even weaker. I mean, it sounds to me like you're saying they could have made it even worse for me. And here, the difference is, I guess, I didn't see that the defense was weak. I saw that it's circumstantial evidence of the officer's testimony to he saw a gun and matched that gun to the one found in the woods. With the complete absence of physical evidence, the DNA did not connect. And, in fact, the expert testified that Mr. Lee had to be excluded as a secretor from the rifle and from the coat. There was no fingerprint. But the jury heard that. The jury heard that. And the jury heard that. And, again, I get back to the taint issue. Had they not heard all of the evidence about the pistol, they would not have convicted. Does your position require us to have a problem, a significant legal problem, with the admissibility of all of this evidence and all of the remarks? Or do you have a list of priority that even if we were to find that this piece of evidence was okay, the rest of this so tainted the trial that it requires us to follow you? I believe that it's the improper submission of the gun charge, the gun evidence to the jury, that tainted the jury's ability to consider. So even if everything else was okay? Even if everything else was okay. That is alone enough? And I would say a logical step from that is if the gun evidence, the pistol in the lap doesn't come in, much of the statement does not come in, prior possession of other weapons, using the other weapons, and for exactly the same reasons they don't come in. And so it's that that taints the rifle. And I don't think you even need to get to the rest. Why would the others – how is the taint from the pistol charge associated with his comments upon his arrest? I'm not following your connection. My connection just is it's prior possession of another weapon. It's not necessarily the context of the statement. And the vest, actually, I was responding in my brief to the court's ruling, which was that it was intrinsic evidence. And this court has always had intrinsic means directly prove. And so even in conspiracy cases, the courts have required it directly prove to have meaning. And if you look at Haas and Cross, that means directly prove. Does having a vest directly prove one of the elements of the 922G? And it does not. But it is part of what happened here. I mean, what's supposed to say, okay, and what was he wearing? Was he wearing a baseball cap and a shirt and a bullet, you know, objection? We can't hear what he was wearing because it might infringe it. Well, but if he was wearing it, it's part of what happened here. It's not prior bad acts. It doesn't fit under any of the aspects that, you know, obviously it's prejudicial if prejudicial means not favorable. But prejudicial means it distracts the jury from what they should be thinking of. And to my mind, as Judge Jordan said, the fact that the bulletproof vest might conjure up an image, you know, it might have been a hunting vest. That's going to conjure up something. But that's permissible from an inference standpoint, isn't it? It just allows everybody to argue. What it means, yeah. Just as Mr. Lee's trial counsel was allowed to argue that he could have argued he was wearing it for warmth. I mean, who knows? Which is why, in answer to your earlier question, I don't believe the vest standing alone was damning to the case. It's the vest in conjunction, most especially, with the pistol charge that should never have been brought and never have been submitted to the jury. It's the pistol evidence, possession of another weapon in a 922G case. That's what led to the prejudice. Okay. All right. Thank you. Thank you. May it please the Court. Rebecca Haywood on behalf of the United States of America. This case is about context, and context is especially important when we talk about Rule 40B with regard to the statements here. The argument is premised on Mr. Lee's claim that intent was not at issue here, but the government had the burden. I have to stop you right at the start because I have a real big question about your standard of proof assertion. I mean, your standard of review assertion. So it will help me to put your whole argument in context if I know what the standard of review is supposed to be in your mind. You've asserted that it's plain error. On which issue, Judge Jordan? This is as to the taint issue. Certainly. And your assertion is that it has to be plain error because there was no motion for a new trial. In response to that, I understand the defense to be saying, look, that's just flat out not the law, and they've cited several cases, Atiyah, Paliello itself, a more recent case, well, I guess that's Atiyah, Murphy, Wright, all those cases where there was no motion for a new trial, but the court was applying the Paliello test and saying the standard as was expressed in Wright. Why are you arguing for plain error here? On what foundation? The foundation is actually this court's decision in Wright. In Wright, this court specifically noted that the defendant had filed a motion for a new trial but did not raise the issue of prejudicial spillover, and on that reason it didn't reach. So if you read the Wright decision, it actually indicates it's adopting the government's view of plain error. Well, Ms. Haywood, I thought the logic then you've got is because there was a motion for a new trial in that case, there has to be a motion for a new trial in any case where you're going to argue taint. Absolutely. How does that logically follow? For instance, in this case, one of our main witnesses, Officer Harkins, is no longer employed with the government anymore. He's retired. Time has passed. If the issue had been raised before the district court, it could have been readily decided at that point in time when, you know, at this point the government is now, if this case would go back, the government would be in a position, it's five years post the events that occurred, and to force a defendant who sat through the trial, saw the acquittal on the firearm charge, to raise the issue at that point. If it's not plain error review, do you lose? Absolutely not. Absolutely not. Why not? Maybe that's your better attack. I think to start with the issue of prejudice, there are certain factors that you have to follow under the Palullo case, but I think you can just go to the last one, prejudice. This jury heard the evidence and actually acquitted him with regard to the pistol claim. So to contend that that evidence actually somehow prejudiced this jury, it doesn't fit the standards. It's clear that then the jury was able to distinguish the evidence, distinguish the charge. There were certainly no, the four factors, there's no, the government didn't use any type of language that would have inflamed the jury with regard to the pistol count. So there was no prejudice. How about the fact that with the pistol charge, that made certain aspects of the statements more relevant or more probative than they otherwise would be? Well, it's the government's position that even if the count shouldn't have gone to the jury, that the evidence could have come in because it certainly is relevant to what happened here on this date. And the argument – Well, you know, the evidence that he accesses a lot of guns and would use them against anyone who threatens him or his family and that he shot at an individual named Pickles who was well known on multiple occasions. Don't you think, I mean, how is that, number one, relevant? Let alone probative and sufficiently probative to overcome the prejudice that a jury sitting here, oh, I have access to a lot of guns, use them against anyone who threatens me or my family, and I shot at Ernest Harris on multiple occasions. I mean, even if arguably you say that that night there was a – he had to protect himself from, you know, because of a feud, that's one thing. But I really need some help here with respect to that aspect of his statement. There is an unspoken suggestion, I think, that the pistol count is somehow a sacrificial count that was used to open the door to allow some evidence in that otherwise wouldn't have come in. And that the government – it's almost tantamount to arguing almost a prosecutorial misconduct kind of an argument that this was never intended and there was never going to be an efficacious count, but it allowed for some material that would help with the other count. Well, two things. Let me start by saying that originally, Lieutenant Krauss had stated that this was a Taurus or Beretta, and that was the understanding from the special agent who had talked to him to the prosecutor who talked to him. So clearly the interstate commerce element would have been met. This was a proper count to go to the jury. But even if it was not, these statements were still relevant to his possession of the rifle. Numerous cases have held that prior possession can be relevant to prove intent and knowledge with regard to – What's intent and knowledge with possession? There was no contention that he didn't know he had one or it was unintentional? The government was required to prove that he knowingly possessed the firearm. The district court instructed the jury that knowingly means intentionally. But he never contended that he didn't know it, that he intended but didn't know it. Oh, I didn't know I had it. Oh, it was there, but I didn't know I had it. He said he didn't have it. This court in Sampson, though, has specifically said that it's not the defendant's theory of the case that governs the admissibility of 404B evidence. It is the government's obligation. It has to be that what's at issue governs admissibility. I mean, you don't look at the defense theory in isolation, but you have to look at the prosecution theory and the defense theory together so that you know what's actually at issue. And in this case, the defense theory was not, as Judge Rendell has said, that, oh, a gun in my car. Who knew? There was no gun in my car. So how could it be relevant to say he knew? And the evidence wasn't that it was underneath the back seat of the car or in a box where you'd have to prove that somehow he wasn't just transporting this. I mean, it was clearly in plain view because that's what the officer said. Well, that's right. This is not a case where the gun was just found away from the Jeep. In this case, Lieutenant Crowell specifically testified he saw the coat with the markings and the coat was found with the rifle, so they're tied together. It's more like the case in Gavon where the drugs were found in the car because you have this testimony. So how is knowledge or intent in this at all? It's in it because it's an element of proof that the government has. And I would also direct this court to your decision. Hold on. You're going too fast for me. You've cited Gavon. That seems to be, in fact, the case that proves the opposite of what you're saying. Gavon, that's the case where the drugs were in the car in a compartment and they had to show, well, you know, there were drugs, and you were in the car where you were, and you can't claim you weren't alert to that sort of thing, and your history shows that. But here the assertion is not that this gun was in my possession and I didn't realize it. It's that this gun was never in my possession. Isn't that a crucial legal distinction in those two fact patterns? No, and I'd like to talk about Jamal for this reason. Judge Becker in the Jamal case from this court specifically noted that you can remove an issue of knowledge and intent if there's a stipulation to the element, and it has to be comprehensive and unreserved. And there was no such thing here. There was no stipulation that if I possessed the gun, I did it intentionally. Why would he stipulate that if I possessed it, I knew it? His argument is I didn't possess it. It's not Gavon where, yes, it was perhaps constructively within my possession, but I didn't know it. It's I didn't have it ever. There was an element of constructive possession here, though, and it was specifically charged by the district court. At the time he was driving the car, the rifle and the coat were in the backseat, and that's specifically found. In plain view. In plain view. The coat was, yes. Well, if you're the prosecutor, you think, gee, what am I going to do to show that, you know, he knew that he had a gun in the backseat? And you'd say to yourself, really, nothing, because it's kind of easy for the jury. You're driving here. What kind of car was it? It was a Jeep Cherokee. Okay. You look through. You've got the seats here. You've got the cup holders and you've got the coat and whatever it is. You know, just, and there's no contention anywhere that my gun, I didn't know it was there. There's no contention. So the prosecutor, in thinking of what proof you have to mount, says basically I don't need to do a thing. It's very obvious. This guy likes guns. He's into guns. Well, you know, so if you have to show proof of, you know, he has access to guns. You know, he used guns against anyone who threatened him and he shot the Pickles. Well, these were his own statements. I mean, this is his recitation of his own statements upon his arrest. The government didn't bring in other witnesses to prove this. But that's not key on a 404B that, oh, well, he said this. Obviously he said it. The issue is, you know, probative versus prejudicial. And that's what we're saying, probative of what? Probative of motive in terms of why he would possess the guns. Well, maybe the feud. Maybe, you know, there's a feud. Right. You know, and maybe you attack that to the bulletproof vest and it makes sense that the guy's totally defensive. Where do you get motive as being an element? Well, I also do think still, though, going back to Jamal, Judge Becker noted that the Second Circuit had adopted the view that Mr. Lee is adopting in this case, that if my defense is I didn't do it at all, intent and knowledge is never relevant. Well, now, wait a minute. Are you actually acknowledging that the issue is intent, not motive? Motive is not relevant. Well, I think both. The government is allowed to prove its case, as old chief versus the United States Supreme Court recognized. You can't sanitize what happened. And the government has an obligation to prove every element that's at issue. And intent is at issue, but motive is also something that's relevant. So it's the government's position that these statements were relevant and probative for both purposes. Can I ask you about Digger the Wonder Dog here for a minute? Certainly. Yeah. Why should we not accept the defense argument that the lengthy description of the prosecutor's childhood experiences with terrific, amazing, scent-following dogs was, in effect, vouching an expert testimony, which wrongly would incline the jury to believe the dog really did alert on that rifle? Well, context again. This was a closing argument. Counsel on both sides, as well as the district court, in its opening instructions and closing instructions, stated that statements of counsel are not evidence. Sure looked like evidence, though, didn't it? Well, no. There was an objection. When the prosecutor moved away, he was telling a personal anecdote about something that is a matter of common knowledge. Certainly I've discussed this with the prosecutor. Common knowledge? The dog, multiple experiences with how dogs follow scents and how they alert and how they circle out and how they find the rabbit when you say, here's the bunny. That's common knowledge? Well, those were about ten sentences, and they were about a different breed of dog. And it is common knowledge that dogs have a better sense of smell than humans and can track. And frankly, Digger's acuity was never really a challenge at trial. It was a question of whether there was scene contamination and whether or not the officers who were on the scene prior to, after Mr. Lee were actually the scent that Digger was following. But, you know, the prosecutor is aware that it's never a good thing to talk about personal experiences. That's been discussed. Well, if the prosecutor was aware, the prosecutor seems to have disregarded that awareness. The prosecutor sure went on a long time. His experience with dogs. He's clearly vouching because he's saying, even if Digger wasn't an actual witness, he was a virtual witness, but from all of the testimony and the prosecutor going on and on and on. He put Digger on the scene and said, Digger told you. It's amazing how Digger knows that this is where he went, not where he came from. It's just amazing. The closing says that Digger told you. Well, that's a separate part from the hunting statement. That was an unobjective, I apologize. It's all part of the picture. He's saying Digger told us, and then he goes on to say to the jury, you could rely exclusively on just the dog evidence. Well, I disagree with this entire picture. The first was a personal antidote that he told about hunting experience. He moved from it. He didn't continue in that regard. The objection was sustained. He didn't go back to it. In the context of the entire proceeding, which you have to look at when you're addressing a prosecutor or a misconduct claim, that was just a small part of the picture. Now, with regard to the second point, there was no violation of the district court's order. It was a logical, reasonable inference from the evidence. And it was also in response to the scene contamination claim that Mr. Lee was making. The officer who found this rifle, Deputy Faulds, originally went to the right away from the Jeep. The rifle and the coat were found to the left. So what the prosecutor was attempting to say was, look, the argument from Mr. Lee was that the digger had followed the officer. He would have originally gone to the right. That's not what he did. He went directly down the path within 10 to 15 inches of where the coat and the rifle were found. So with no objection and a plain error analysis, that's not something that would affect the integrity of the trial in light of the fact that they were arguments and not statements, it was reasonable and not a violation of the court order. I see my time is up. If you'd like me to address any other issue. I think we're fine. Thank you very much. Thank you. The statement that the vouching was in response to the scene contamination claim actually seems to me an admission to improper use of the dog evidence to me. First, as a matter of fact, there were, scene contamination is in the record and I don't need to delve into it, but Lieutenant Krause did go directly from the Jeep to the gun, and so to say that that wasn't a possible path, direct path to follow, a contaminated path, that's just not right as a matter of fact. With respect to Judge Jordan's comments about the impact of the dog vouching. Questions, not comments. I'm sorry, questions. The misconduct with respect to the dog does two things, and they're incredibly significant. It undermines the significance of the failure of Digger to actually indicate or alert on the rifle because he says Digger went to the rifle. And then it undermines defense argument about scene contamination, undermining the probative value of the trail because, again, what he's saying is this dog is so amazing. He can go from this one to this one and know which is the right path to follow. I had another comment to make. There was a, Judge Prater mentioned something about this gun, the gun charge being, I'm not sure if I remember your word, sacrificial lamb to bring in all of the bad evidence. Once again, though, I'll emphasize what Judge Jordan said. These are questions. Totally questions, and I wanted to respond in part to it. Actually, Lieutenant Krause didn't say from the very beginning that it was either a Breda or a Taurus. In his original police report, he said nothing of the kind. It's an exhibit to the trial, but I don't have it included in the appendix. So it's part of the record, but not in the appendix. But to follow up my question to your opponent, you're not really mounting an argument of prosecutorial misconduct in terms of the charging, are you? I don't think that you could. Charging decisions are totally a matter of discretion, but it does indicate some overreaching, and it paints a picture to me, overreaching using the dog evidence, taking it to the degree, drawing improper inferences from it, and in the same way, knowing from the discovery and then knowing at the very least at the end of trial that the officer can't make the interstate commerce nexus connection and continuing to go down that path with respect to introducing all of the gun evidence. What was the DNA evidence? There was two DNA experts. One testified he couldn't come to a conclusion, and another testified that he came to a conclusion to a reasonable degree of scientific certainty that Mr. Lee had to be excluded as a secretor for the gun and for the coat covering the gun. And also there was fingerprint testing done, but that also did not tie Mr. Lee to the weapon. Did that make the issue of knowledge and intent more relevant? No, not at all. It was just response to the government's position that he's the one that threw it. Is it a completely different topic, but just to nail down and make sure, everybody has agreed that there needs to be a resentencing based on the Begay problem. Is that right? Yes, we are in agreement. I'm seeing both the counsel nod their heads and say yes. Thanks. Thank you. Thank you, counsel. Case is well argued. We'll take it under advisement. Ask the clerk to recess. Thank you. Thank you.